

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

September 12, 1963

State Board of Insurance
1100 San Jacinto
Austin 14, Texas

Opinion No. C-137

Re: Power of the State Insurance
Board to promulgate joint
policies of insurance under
and by virtue of Article
5.35 of the Insurance Code.

Gentlemen:

You request our opinion as to the legality of a syndicated
insurance policy under a classification known as the "Highly
Protected Risk Rating Plan." You had been previously advised by
this Department in Opinion MS-214, issued May 20, 1955, that you
were authorized to make such classification of insurance risks,
but apparently your authority to issue joint insurance policies
under the plan was not involved in that opinion.

You now request that an opinion be given, not only as to
the legality of a joint policy to be issued under such classifi-
cation, but that our opinion be broadened to include the ques-
tion of your authority to, in effect, approve of policies of
joint insurance by way of an endorsement attached to the poli-
cies, all done pursuant to a previous agreement of the partici-
pating companies.

Taking your original request in connection with the later
supplemental request, it seems to resolve itself into the single
question of whether the State Board of Insurance is authorized
to promulgate policies, and fix the rate therefor, which poli-
cies contemplate a joint risk by two or more insurance companies,
assuming the joint risk at the inception of the original policy.
Of course, Article 5.76 of the Insurance Code authorizes rein-
surance of risks which have been previously written by a single
company.

While Article 5.25 of the Insurance Code gives the Board
very broad power and authority to prescribe, fix, determine and
promulgate rates of premiums to be charged and collected for in-
surance, etc., it and the other provisions of the Insurance Code
do not expressly authorize the Board to promulgate such policies.
We believe, however, that such power does exist by fair implica-
tion.

Article 5.72 of the Insurance Code provides as follows:

"(a) Every group, association or other organization of insurers which engages in joint underwriting or joint reinsurance, shall be subject to regulation with respect thereto as herein provided. (Emphasis added.)

"(b) If, after a hearing, the Board of Insurance Commissioners finds that any activity or practice of any such group, association or other organization is unfair or unreasonable or otherwise inconsistent with the provisions of this subchapter or with the laws applicable thereto, it may issue a written order specifying in what respects such activity or practice is unfair or unreasonable or otherwise inconsistent with the provisions of the applicable laws, and requiring the discontinuance of such activity or practice." (Emphasis added.)

This Article, from the Code, was brought forward from the Acts of 1949, and incorporated in the Code when it was adopted in 1951, and without change. There has been no opinion of this Department, and no adjudged case dealing with the question of whether this Article is or is not a recognition by the Legislature that the authority to issue joint policies had theretofore been by fair implication granted by the Legislature.

Article 21.34 of the Insurance Code has been on the statute books of this State as long as the anti-trust laws. It merely provides that, when insurance companies, "whether life, health, fire or marine or inland shall associate themselves together for the purpose of issuing or vending policies or joint policies of insurance," that they should pay all taxes before being permitted to do business in Texas. While this does not deal with the subject matter directly, and may be primarily applicable to foreign insurance companies, still it was an implied recognition by the Legislature even at that time that such joint policies might be lawfully issued. (Emphasis added.)

The Attorney General's Department in 1933 wrote an opinion to W. S. Pope, Casualty Commissioner, in which it was stated:

"It is a well-established practice by insurance companies to issue joint policies and I believe our Legislature has fully recognized and authorized the same. It may be that the law has not expressly authorized it, but by fair implication, in my opinion, the Legislature has acquiesced in the practice and impliedly authorized the same."

This opinion by the Department has not been overruled.

We quote further from your supplementary letter as follows:

"In connection with that request for an opinion I wish to advise you that on March 27, 1959, the State Board of Insurance approved an inland-marine policy form covering the risk of nuclear energy. A copy of this form is enclosed. You will note that the policy form is issued as a combined policy by members of the Nuclear Energy Property Insurance Association with each company having a separate liability in accordance with the percentage of coverage afforded. Each member company of the Association signed and executed a 'Declaration of Participation.' Excerpts from the Declaration of Participation are enclosed herewith."

Again we quote from your original opinion request as follows:

"Pursuant to such opinion (ours: Opinion No. MS-214, May 20, 1955), the Board did approve and adopt said proposed plan and since that time the Factory Insurance Association has been engaged in writing of insurance risks in Texas against the Fire and Allied Line Perils pursuant to the classification of risks and the fixing of premium rates approved, adopted and promulgated by the Board. Many of the risks written pursuant to the 'Highly Protected Risk Rating Plan' involve such large amounts of liability that no one, or even at times several, separate companies are able to assume the liability individually."

Based upon the quotations in the letters as shown in the two preceding paragraphs, we are safe in assuming that you have made a departmental interpretation of your statutory powers to the effect that you are authorized under Article 5.35 to approve joint insurance policies as stated above. The Legislature was in session when you approved the issuance in 1959, and there have been two full sessions since that time, and presumably they were aware of your departmental interpretation and did not see fit to change it.

Since there are no adjudged cases, either in Texas or any other jurisdiction coming to our attention, which could be construed as passing upon the question, we believe that we may safely rely upon the interpretation that the Legislature has indicated by its passage of Article 5.72, to the effect that such power impliedly exists. Since your own department has further placed the same interpretation upon your statutory powers, we believe that the courts will follow such interpretations.

Referring to the subject of legislative interpretation of an existing statute, your attention is directed to Section 127, 39 Tex.Jur.2d 239, after referring to such rule of legislative construction, states the following:

"On the other hand an interpretation contained in an act passed at a subsequent Legislature is not controlling, although it may be very significant and entitled to substantial weight. Thus where a later act implies a particular construction of an existing law, and particularly where such law would be meaningless or unnecessary under any other construction, it is persuasive when a court is called upon to interpret the prior law."

In the same commentary, Section 126, page 235 of Volume 30, the rule pertaining to executive or other departmental interpretation of a statute, is laid down as follows:

"The court will ordinarily adopt and uphold a construction placed upon a statute by an executive officer or department charged with the administration if the statute is ambiguous or uncertain and the construction so given it is reasonable. In other words, the judiciary will adhere to an executive or departmental construction of an ambiguous statute unless it is clearly erroneous or unsound, or unless it will result in serious hardship or injustice, although it might otherwise have been inclined to place a different construction upon the act."

When these two rules of construction are applied to the foregoing facts, it seems clear that the court will adopt such interpretation and you are advised that you are authorized to approve such policies.

This is not to hold that such combined policies may be acted upon by the insurance companies in such a way as would be violative of the anti-trust laws. Certainly they may not be used as a vehicle for suppressing competition among themselves or others. We think the Legislature had this in mind in enacting subdivision (b) of Article 5.72, above referred to.

If such condition should come to your attention you will be fully authorized to take appropriate measures under this subdivision, to stop any such practice, and possibly cause the institution of appropriate punitive measures. It will not be presumed that the request made to you to promulgate and approve such policies had concealed in it a purpose to violate the anti-trust laws. We think it will rather be presumed that the purpose was to meet an economic situation which was referred to in your letter of November 10th, wherein you state:

". . . Many of the risks written pursuant to the 'Highly Protected Risk Rating Plan' involve such large amounts of liability that no one, or even at times several, separate companies are able to assume the liability individually."

We think it might be further presumed that there was a design and purpose to effectuate a more efficient operation, thereby increasing their profits, through the use of lawful methods.

Such practices were inferentially commended by the Supreme Court speaking through Justice Wilson in the case of Arkansas Fuel Oil v. State, 280 S.W.2d 723, when it stated:

"The exchange of standardized gasoline in order to reduce the cost of hauling, storing and handling may be good business if it does in fact reduce costs. It is not prohibited by law."

Any prior opinions of this office that conflict with this opinion are expressly over-ruled to the extent of the conflict.

## SUMMARY

The promulgation and use of the "syndicated policy" or "reinsurance rider" is authorized by law, and will not per se constitute a violation of the anti-trust laws of this State. Such policies, and method of doing business, if and when they are used to stifle competition, either as between themselves or others, may constitute such violation, in which event you are authorized to proceed as provided in subdivision (b) of Article 5.72.

Very truly yours,

WAGGONER CARR
Attorney General

BY: J. S. BRACEWELL
Assistant Attorney General

JSB:da

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman

Albert Jones
Milton Richardson
J. C. Davis

APPROVED FOR ATTORNEY GENERAL

BY: Stanton Stone